Dear Senator Jones:
Your request for a clarification of a previous Attorney General's Opinion has been referred to me for a response. Prior to addressing the substance of your questions, a discussion of certain background material is necessary.
In 1990, the legislature passed R.S. 49:1001 et seq. which was generally designed to establish standards for drug testing in Louisiana, with a few noted exceptions. For example, R.S.49:1005 states that all drug testing, "except as provided for in R.S. 49:1008," must be performed in NIDA-certified (now SAMHSA-certified) or CAP-FUDT-certified laboratories, if both of the following apply: (1) If, as a result of such testing, mandatory or discretionary consequences will be rendered to the individual; and (2) Drug testing is performed for any or all of the following classes of drugs: marijuana, opioids, cocaine, amphetamines and phencyclidine. Consequently, all drug testing falling within the above definition must be performed by nationally certified laboratories.
Laboratories defined in R.S. 49:1008 must be inspected and approved by the bureau of health services financing, health standards section of the Department of Health and Hospitals (DHH). These laboratories are referred to as "screening laboratories." DHH also has the authority to promulgate rules and regulations governing such laboratories. R.S. 49:1008(A)(3). Screening laboratories are defined as:
 "Screening laboratories" means any building, place, or facility in which operations and procedures for the biological, serological, immunological, chemical, immuno-hematological, or other examination of material derived from the human body are performed for the purpose of drug testing and which is not NIDA-certified or CAP-FUDT-certified for forensic urine drug testing and if the following apply to the drug testing of said "screening laboratory":
 (a) If, as a result of such testing, mandatory or discretionary consequences will be rendered to the individual, and
 (b) Drug testing is performed for any or all of the following classes of drugs: marijuana, opioids, cocaine, amphetamines, and phencyclidine. (R.S. 49:1001(20)
It should be noted that the two types of laboratories defined above may or may not be involved in the actual collection of the urine sample. Whether done by a lab or a separate company, a "collection site person" must also have successfully completed training. R.S. 49:1001(5).
To summarize, the statutory framework contemplates collection by a trained individual. The transfer of the sample is regulated to ensure a proper chain of custody to a screening laboratory. The state certified screening laboratory or in some cases the NIDA (SAMHSA) or CAP-FUDT-certified lab, performs an initial test that is neither as accurate nor as refined as that performed in a confirmatory test by a NIDA (SAMHSA) or CAP-FUDT-certified laboratory. If the initial test is adulterated, another sample is obtained. If the initial test is positive, the sample is transferred to a NIDA (SAMHSA) or CAP-FUDT-certified laboratory for a confirmation test, again following procedures to ensure a proper chain of custody.
The legislative framework is designed to ensure that drug test must meet certain standards that guarantee reliability and accuracy before they can be used to support mandatory or discretionary consequences to an individual. The legislation also attempts to ensure the integrity of the collection process and chain of custody of the sample as a further guarantee of the reliability and accuracy of the results. Additionally, certification of the labs conducting the tests further these goals.
With the above discussion in mind, I turn now to your first request for clarification. You asked for reexamination of our response to your first question in your original request, which was: "In what situation can on-site drug testing be used without coming under R.S. 49: 1001, et seq.?" The phrase "on-site drug test" is not defined by statute. I interpret that phrase to refer to tests performed at the job site by labs not state or federally certified.
You stated that, if no mandatory or discretionary consequences flow to an individual, i. e. if the on-site test is used merely to discard negatives, on-site drug testing should not fall within the terms of the law.
Initially, it should be noted that mandatory or discretionary consequences may be imposed as a result of a positive initial or screening test. For example, an initial positive on a pre-employment drug screen test may be used as a basis to not hire, even without a positive confirmatory test. R.S. 49:1008(E). Moreover, the legislation notes that, "Action taken by the employer as a result of a positive drug test such as removal from performing a safety-sensitive function is not stayed pending the result of the second test." R.S. 49:1006(D)(8). Finally, a review of drug testing programs for state employees reveals that some contemplate mandatory or discretionary consequences be rendered to an employee as a result of a positive initial or screening test.
Therefore, if the on-site drug test is not specifically excepted from R.S. 49:1001 et seq. and it tests for the presence of the five illegal drugs listed, but as a result of such testing no mandatory or discretionary consequences will be rendered to an individual, i. e., it simply discards negative results, while positive results are tested further by state or nationally certified laboratories prior to the rendering of mandatory or discretionary consequences, then the on-site drug test would not fall within the statutory requirement of a drug test that would have to be performed in a national or state certified lab. To fall within the above exception, the employer's drug testing policy should state that no mandatory or discretionary consequences will be rendered to an individual as a result of the on-site drug test. Moreover, even if the on-site drug test itself may not have to be performed in a state or nationally certified lab, the collection site person must still have successfully completed training and all laws and procedures that ensure the integrity of the sample and chain of custody must be observed.
Secondly, you quote R.S. 49:1008(E), noted above, and state that the word "permanent" is not used elsewhere in the statute. You ask, "Is this a drafting error, or is there a permanency issue at play in Section 1008 which does not apply elsewhere? Please explain the distinction between "permanent mandatory or discretionary consequences" and merely "mandatory or discretionary consequences." You ask me to revisit my response to your second question in your original request, which was, "Can on-site drug testing be used if there are no permanent consequences to an employee or a job applicant without coming under LRS 49:1001 etseq.?"
As noted above, positive test results for pre-employment applicants need not be confirmed prior to eliminating that applicant from consideration for a job. This is the only instance in which the law permits rendering permanent a consequence on the basis of the initial screening drug test alone. ant must be informed that he or she may pay for a confirmatory test, a negative confirmatory test does not require the cancellation of the initial positive result. R.S. 49:1007(B). While the law allows the imposition of a consequence to an employee based on a positive initial test as noted above under R.S. 49:1006(D)(8), the law requires that, "If the result of the second test is negative, the medical review officer shall cancel the positive results of the first test." R.S. 49:1006(D)(9).
Therefore, in answer to your second question, if mandatory or discretionary consequences will be rendered to an employee as a result of a test, the test must be performed in a lab that conforms to the statutory requirements. The law makes no distinction concerning the above based upon the duration of the consequences imposed.
Your third request for clarification states: "Section 1008 also implies that re-employment (sic) screening is subject to a different standard of review than that for employees (See sub-sections D and E). In light of this apparent statutory distinction, perhaps you could also re-visit question 3 of my original letter, regarding the nature and scope of the term "pre-employment testing" using the argument outlined above concerning "consequences resulting from" on-site testing. It would appear that the use of on-site drug testing for job applicants would be permissible under the statute, provided that any positive result is forwarded for laboratory testing as described in the statute. Your third original question was, `Can on-site drug testing be used for job applicants who have not yet been given an offer to intent to hire by an employer without coming under LRS 49:1001, et seq.?'"
On-site drug testing for pre-employment screening may be performed on any consenting applicant, if no mandatory or discretionary consequences will be rendered to the applicant as a result of a positive test. The prospective employer's drug testing policy must specifically include the above, the collection site person must still have successfully completed training and all laws and procedures that ensure the integrity of the sample and chain of custody must be observed.
Your fourth question is: "Under R.S. 49:1001 et seq., can on-site drug tests be used as the sole basis for rejecting an `at will' job applicant, or for discharging an at-will employee?"
In response to your fourth query, the answer is: no. Rejection of an "at will" job applicant, however defined, or termination of an at-will employee is a "mandatory or discretionary consequence" of a positive test result. Consequently, the test must be performed in state or nationally certified labs. Your opinion request goes on to state:
 "If this is not permitted under the statute, does the statute then conflict with Attorney General Opinion Number 90-150, which explains and upholds the at-will employment doctrine? That Opinion states:
 a. At-will employment doctrine:
 This doctrine is set forth in Louisiana Civil Code Art. 2747, which provides:
 "A man is at liberty to dismiss a hired servant attached to his person or his family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause."
 This provision of the Civil Code establishes a norm of freedom for both the employer and the employee in an "at-will" employment relationship. The employment subsists only at the free will of both parties. Because the employment is "at-will," there is no contract between the parties, which by definition subsumes an obligation of a certain term. Aubry Rau. Cours de Droit civil Francais, (LSSI trans Yiannaplous). Not only is the employer free therefore to discharge the employee at will, but also the employee is free to discharge the employer and seek other employment. The entitlement to terminate the employment relationship is equal if there be no fixed contractual term for the reciprocal obligations of employment. Citing Brannan v. Wyeth Laboratories, 526 So.2d 1001 (La. 1988).
 That Opinion goes on to state:
 Inherent in the exercise of the lawful right of an employer to discharge an at-will employee is a civil immunity against damages for exercise of that right. Brennan, supra. One rationale in the doctrine for this immunity is it is impossible to quantify damages for the wrongful termination of an employment relation without a term. (emphasis added).
 If an employer may discharge an at-will employee at any time, for any reason, and that it is impossible (according to your own opinion) to quantify damages (consequences), than that employer may discharge the employee for producing a positive result on an on-site drug test. Similarly, the employer would be free to refuse to hire an at-will applicant on the same basis and thus there are no consequences. If this analysis is not correct, how does the statute accord with the doctrine? It appears that the statute only applies when there is an employment contract or a written offer to hire as was argued in my previous letter.
This opinion's response to your fourth question does not conflict with Atty. Gen. Op. No. 90-150, or the "doctrine of at-will employment." An at-will employee may be discharged at any time for any reason, as long as it does not violate any law. Numerous laws exist that prohibit various forms of discrimination, for example, that restrict the employer's ability to terminate even an at-will employee. Similarly, if any mandatory or discretionary consequence is rendered an employee or an applicant, as a result of a positive drug test performed in a lab that does not conform to statutory requirements, such a "consequence" would violate law.
I trust the above clarifies the original opinion of this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: JAMES C. HRDLICKA
Assistant Attorney General
RPI/JCH:lrs